UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

ADMINISTRATIVE INSPECTIONS OF
MEDICAL CLINICS OPERATED BY:

Jesse J. Van Bommel, M.D.
13760 W. Capitol Drive
Brookfield, WI 53005

Misc. No. 19-M-0084
19-M-004

Jesse J. Van Bommel, M.D.
N51W16911 Old Hickory Road
Menomonee Falls, WI 53051

Affidavit and Application for Administrative Inspection Warrant Under
Section 510 (21 U.S.C. § 880) of the Controlled Substances Act (P.L. 91-513)

TO: United States Magistrate Judge David E. Jones
United States District Court
Eastern District of Wisconsin

I, Laurie Kaufmann, being duly sworn, depose and state as follows:

1. I am a duly appointed Diversion Investigator of the United States Department of Justice, Drug Enforcement Administration ("DEA"), assigned to the Milwaukee District Office. I have been employed as a Diversion Investigator with the DEA since January 1989 and have been assigned to the Milwaukee District Office since August 2010. My duties include conducting investigations of the diversion of legally manufactured controlled substances into other than legitimate medical, scientific, and industrial channels. My duties also include inspections of DEA registrants who are authorized to handle controlled substances under the Comprehensive Drug Abuse Prevention and Control Act of 1970 (Controlled Substances Act or "CSA"), Title 21, United States Code (U.S.C.), Sections 801, *et seq*, and its attendant regulations, Title 21, Part 1300, *et seq*.

2. Pursuant to the CSA, 21 U.S.C. §§ 878(a)(2), 880(b), and 880(d), and 28 C.F.R. Part 0, Appendix to Subpart R, § 3(b), I am authorized to execute Administrative Inspection Warrants for the purpose of inspecting controlled premises and/or persons and firms registered under the CSA, including inspecting, copying, seizing and verifying the correctness of all records, reports, and other documents required to be kept or made under 21 U.S.C. § 827 and 21 C.F.R. § 1304.01 *et seq*.

3. Jesse J. Van Bommel, M.D. ("Dr. Van Bommel") is registered with the Attorney General under 21 U.S.C. §§ 822 and 823 (DEA Registration Number BV7900980), and is authorized as a practitioner to procure, store, prescribe, dispense and administer controlled substances in Schedules II-V. Dr. Van Bommel is registered with DEA at a residential address located at N51W16911 Old Hickory Road, Menomonee Falls, Wisconsin 53051. That location is therefore a "controlled premise" within the meaning under the CSA. 21 U.S.C. § 880 and 21 C.F.R. § 1316.02(c).

4. The CSA requires physicians such as Dr. Van Bommel to keep complete and accurate records of all controlled substances received, sold, dispensed, administered, or otherwise disposed of for the last two-year period on any controlled premises. 21 U.S.C. § 827 and Title 21 C.F.R. § 1304.01 *et seq.* He is required to maintain records and inventories for controlled substances and have them available for inspection for a period of at least two years pursuant to 21 U.S.C. § 827(b) and 21 C.F.R. § 1304.04. He is required to dispense controlled substances only for a legitimate medical reason in the usual course of professional practice pursuant to 21 U.S.C. § 829(a)(b)(c) and Title 21 C.F.R. 1306.04(a)(b)(c). Further, the CSA authorizes the DEA to inspect the above records pursuant to an Administrative Inspection Warrant to determine compliance with the requirements of the CSA.

5. The DEA's investigation has determined that in addition to his registered location, since August 2014 Dr. Van Bommel has been practicing medicine at Relief Pain Management and/or Relief Treatment Center, 13760 W. Capitol Drive, Brookfield, Wisconsin 53005. To the extent Dr. Van Bommel maintains records of the holding, manufacture, distribution, dispensing, administration or disposal of a controlled substance at this location, it is also subject to inspection pursuant to 21 U.S.C. § 880. See 21 U.S.C.§ 880(a)(2).

6. Based on my investigation to date, including interviews of former patients, I have determined that Dr. Van Bommel likely maintains medical and other records related to these activities at Relief Pain Management and/or Relief Treatment Center. I therefore seek authority to inspect both Dr. Van Bommel's registered location as well as his clinic location at 13760 W. Capitol Drive, Brookfield, Wisconsin.

7. Under the CSA, sufficient probable cause for the issuance of an Administrative Inspection Warrant exists if the supporting affidavit establishes that: (1) the registrant has never been inspected before (see *Matter of Searches and Seizures Conducted on October 2 and 3, 1980*, 665 F.2d 775, 777 (7th Cir. 1981) and *United States v. Acklen*, 690 F.2d 70 (6th Cir. 1982)); (2) a substantial period has passed since the registrant was last inspected (*United States v. Osborne*, 512 F. Supp. 413 (E.D. Tenn. 1980) and *United States v. Greenberg*, 334 F. Supp. 364 (W.D. Pa. 1971)); (3) the registrant has recently received an inordinately large supply of controlled substances (*Matter of Searches and Seizures Conducted on October 2 and 3, 1980, supra*); or (4) the registrant has engaged in other suspicious activity (*United States v. Greenberg, supra*).

2

8. Your affiant has examined the files and records of the Drug Enforcement Administration and has determined that Dr. Van Bommel has never been inspected by the DEA. In addition, the investigation to date has revealed certain unusual circumstances surrounding Dr. Van Bommel's medical practices. Both these circumstances and the lack of prior inspection support the issuance of an Administrative Inspection Warrant.

9. For example, on multiple occasions in 2018, I and other investigators have driven past this clinic location. Investigators observed no office hours posted on the front door or window or on any signage at the practice known as Relief Treatment Center at 13760 W. Capitol Drive, Brookfield, WI 53005. Surveillance conducted of this location on various days of the week and at different times of the day have found the blinds drawn. In addition, Dr. Van Bommel's vehicle, a black GMC Yukon which is known to Investigators by its customized Green Bay Packer license plate of "JVB", is often not present at the back of the building where it has been observed previously. Recent multiple phone calls placed to the phone number for this practice, (262)794-3140, have been answered by a message with a female voice advising to leave a message unless the caller is a doctor, pharmacy staff, or medical professional who should call (262)794-2304.

10. The United States Postal Inspection Service has advised DEA that the carrier on the route who delivers mail to this practice reports that when he delivers mail to this address, usually between 1:00-1:30 p.m., the window blinds are usually drawn closed and no one appears to be present. The carrier advised that he has rarely seen the practice open.

11. Investigators conducted video surveillance conducted at Dr. Van Bommel's office from July 31, 2017 and February 2, 2018. That surveillance revealed that on most weekdays, an average of several individuals entered and exited the clinic. There were occasions when the office was apparently closed, as the blinds were drawn all day and no one was observed entering or exiting the front entrance. Yet, prescription records show that controlled substance prescriptions were issued by Dr. Van Bommel on those days. Investigators have learned that in 2017, Dr. Van Bommel worked on Fridays at another medical practice, the Stevanovic Family Practice in Milwaukee, WI, and some of these prescriptions may have been issued when he was seeing patients at this location.

12. Dr. Van Bommel's prescribing consists largely of narcotic pain medications such as oxycodone, methadone, and morphine. He also previously prescribed Subsys®, a form of fentanyl approved for breakthrough cancer pain. On September 25, 2015, Dr. Van Bommel became authorized under the Drug Abuse Treatment Act ("DATA") to prescribe controlled substances containing buprenorphine for the purpose of opioid addiction treatment for up to 30 patients. On October 6, 2016, the DATA authorization was increased to a maximum of 100 patients. It is not DEA's intention to inspect records related to prescriptions issued for opioid addiction treatment.

13. Oxycodone is a Schedule II controlled substance that may be prescribed to treat moderate to severe pain. Other members of the class known as opioid agonists in Schedule II include substances such as morphine, hydromorphone, fentanyl, codeine, and

3

hydrocodone  Pharmacological effects of opioid agonists include axiolysis, euphoria, feelings of relaxation, respiratory depression, constipation, myosis, and cough suppression, as well as analgesia."

14. Schedule II controlled substances are particularly dangerous. By definition, they have "a high potential for abuse" which "may lead to severe psychological or physical dependence." 21 U.S.C. § 812(b)(2). Schedule II controlled substances are the most dangerous drugs that can be prescribed for medical use. *See* 21 U.S.C. §§ 812(a)(1)(B) and (C)(defining schedule I controlled substances as having "no currently accepted medical use in treatment in the United States" and lacking "accepted safety . . . under medical supervision") and 21 U.S.C. §§ 812(b)(3)(A), (4)(A) and (5)(A)(defining controlled substances in schedules III, IV and V as having a lower potential for abuse than schedule II controlled substances).

15. Because schedule II controlled substances have a high potential for abuse, Congress has enacted special statutes and regulations governing prescriptions for these drugs. For example, except in emergency situations, or when administered directly to a patient by a "practitioner," schedule II controlled substances can be dispensed only with a "written prescription of a practitioner." 21 U.S.C. § 829(a). In addition, "[n]o prescription for a controlled substance in schedule II may be refilled." Instead, an individual practitioner may issue multiple prescriptions authorizing patients to receive up to a 90-day supply of a schedule II controlled substance provided certain conditions are met, one of which is that the physician concludes "that providing the patient with multiple prescriptions in this manner does not create an undue risk of diversion or abuse." 21 C.F.R. § 1306.12(b)(1). For the distribution of a controlled substance to be authorized by law, it must be prescribed "for a legitimate medical purpose by an individual practitioner acting in the usual course of his professional practice." 21 C.F.R. § 1306.04(a).

16. As part of DEA's investigation, a former patient advised DEA that she was a patient of Dr. Van Bommel but she stopped seeing him because she felt he was overprescribing prescription medications. Dr. Van Bommel had been treating her for back pain, for which she was receiving Social Security Disability due to a prior back injury and failed surgery. She stated that Dr. Van Bommel wanted to put her on Subsys®, a sublingual fentanyl spray, which scared her because she saw what Subsys® was doing to her husband. She was worried that her husband was going to overdose on the Subsys® because Dr. Van Bommel kept increasing his dose despite him being "out in left field" (as in having abnormal or strange behavior), nodding off all the time, losing his job for being incoherent and falling asleep at work, and cognitive impairment. She was also concerned about the cost of Subsys®, which was approximately $30,000 per month, and was worried that it could jeopardize their health insurance.

17. The former patient's husband advised DEA that he was being treated by Dr. Van Bommel for back pain and that Dr. Van Bommel suggested he try Subsys®. He felt that Dr. Van Bommel was trying to get more patients on Subsys®. Dr. Van Bommel even brought the sales representative into the exam room during one of his office visits to talk to him about Subsys® (note: Subsys® is made and marketed by Insys Therapeutics, Inc.).

4

He stopped going to Dr. Van Bommel at the insistence of his wife. He stated that the physician he switched to after Dr. Van Bommel told him he had been taking enough fentanyl to "drop a horse." At the time he was a patient of Dr. Van Bommel, he had four convictions for Operating While Intoxicated ("OWI") and an arrest and pending trial for another OWI. Dr. Van Bommel was evidently aware of this because the patient stated that Dr. Van Bommel questioned him about why he never mentioned his OWI arrest and convictions. The patient felt that the OWI's were not pertinent since they occurred prior to him becoming Dr. Van Bommel's patient. The patient admitted that his first two OWI's were alcohol-related, but all the other OWI's (in 2009, 2011, and 2013) were medication-related.

18. According to the U.S. Food & Drug Administration, Subsys® is indicated for the management of breakthrough pain in cancer patients (see https://subys.com, see also https://www.accessdate.fda.gov/drugsatfda_docs/nda/2012/202788_subsys_toc.cfm). According to the Subsys® website, "because of the risk for misuse, abuse, addiction, and overdose, Subsys® is available only through a program called the 'Transmucosal Immediate Release Fentanyl (TIRF) Risk Evaluation Mitigation Strategy (REMS) Access Program. To receive Subsys®, you must…sign the Patient-Prescriber Agreement Form…" The two patients described above advised DEA that they have never had cancer and one of the patients did not recall signing any forms regarding Susbsys®.

19. Analysis of Dr. Van Bommel's prescription records from the Wisconsin Prescription Drug Monitoring Program has revealed that from August 11, 2014 to October 23, 2018, he wrote approximately 14,175 prescriptions for controlled substances to approximately 455 different patients. The majority of what he prescribed, more than 72% of his prescriptions, were for opioids, including 6,860 for Schedule II opioids such as methadone, fentanyl, morphine, and oxycodone. In 2018, Dr. Van Bommel wrote more than 3,120 controlled substance prescriptions, despite not appearing to have regular office hours. Between December 1, 2014 and December 19, 2016, Dr. Van Bommel wrote 66 prescriptions for Subsys® to ten different patients, primarily in 2015, with the patient described in paragraph 17 above receiving the most Subsys® prescriptions (13) and three other patients accounting for 33 of the Subsys® prescriptions. Dr. Van Bommel wrote most of his prescriptions on Mondays and Thursdays, but it appears he also wrote numerous prescriptions on Saturdays and Sundays.

20. Based on the foregoing circumstances, there exists a valid public interest in the effective enforcement of the Controlled Substance Act and its implementing regulations sufficient to justify the inspection of Dr. Van Bommel's controlled premises to verify the correctness of inventories, records, reports, controlled substances dispensed, controlled substances inventories and other documents that are required to be kept under the Controlled Substance Act. Certain records, to wit, inventories, records of disposition, receipt of controlled substances, patient files, appointment schedules, and sign in sheets may be viewed during the course of this inspection for the purpose of verification.

21. Your affiant states that the inspection will be conducted within regular business hours; that the Investigator's credentials will be presented to the registrant; that

5

the inspection will begin as soon as practicable after the issuance of the warrant and will be completed with reasonable promptness; and that the warrant will be returned within ten (10) days to a Magistrate Judge for the United States District Court for the Eastern District of Wisconsin.

22. Your affiant has verified and has personal knowledge of the facts contained in this affidavit and they are true to the best of her knowledge and belief.

Dated: 1/10/19

*Laurie Kaufmann*
Diversion Investigator
Drug Enforcement Administration

Sworn to before me and subscribed in my presence on the 10th day of January, 2019.

HONORABLE DAVID E. JONES
United States Magistrate Judge
United States District Court
Eastern District of Wisconsin